IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID GLEN JOHNSON, | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | Civil Action No. H-07-1243 |
| | § | |
| RICK THALER, | § | |
| *Respondent.* | § | |

**MEMORANDUM OPINION AND ORDER**

David Glen Johnson, a state inmate represented by counsel, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction. Pending before the Court is respondent's motion for summary judgment (Docket Entry No. 18), to which petitioner filed a response (Docket Entry No. 21).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case for the reasons that follow.

**I. PROCEDURAL BACKGROUND**

Petitioner was charged with capital murder. His first jury trial ended in a mistrial, but he was found guilty in a second trial and sentenced to life imprisonment. His motion for new trial asserting ineffective assistance of counsel was denied following an evidentiary hearing, and his conviction was affirmed on appeal. *Johnson v. State*, No. 01-02-01051-CR (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd) (not designated for publication). The Texas

Court of Criminal Appeals refused discretionary review. *Johnson v. State*, PDR No. 1107-05 (Tex. Crim. App. 2006). Petitioner did not seek state habeas relief.

Petitioner claims that trial counsel was ineffective in the following particulars:

1. Trial counsel failed to investigate potential alibi witnesses.

2. Trial counsel failed to obtain a transcript of the first trial for use at the second trial.

Respondent asserts that these grounds are without merit and should be denied.

## II. FACTUAL BACKGROUND

The state appellate court set forth the following statement of facts in its opinion:

Randall Blasdel was killed by a gunshot to his head at approximately 4:30 p.m. on Sunday, January 30, 2000, in the parking lot of a motel. The State presented the testimony of two witnesses, Juan Rodriguez and Allen Elliott, who were present at the scene when the murder was committed.

Rodriguez testified that Derrick Porter contacted him on January 29, 2000, asking to buy 200 pounds of marijuana. Rodriguez testified that, after he met with Porter to obtain proof that Porter had the money for the marijuana, they arranged to meet to make the exchange. Rodriguez testified that, at approximately 4:00 p.m. on Sunday, January 30, 2000, he met Porter, who was accompanied by a black man wearing a brimmed hat, in the parking lot of a restaurant adjacent to the motel where he had rented a room in which to make the exchange. At trial, Rodriguez identified appellant as the black man with the brimmed hat and testified that appellant and Porter were in a Jeep with a brown top. According to Rodriguez's testimony, Porter pushed him to the floor when they entered the motel room and appellant pulled out a gun. Rodriguez stated that Porter made him disrobe down to his underwear and that, after Porter left the motel room with his clothes and other possessions, appellant shot him three times. Rodriguez stated that he dialed 911 after appellant fled and that he looked out the window after he heard more gunshots and saw the Jeep, followed by his car, leaving the parking lot. Rodriguez said he also saw a man lying on the ground and blood on the pavement and he left the motel room to seek help.

> Elliott, the area manager for the motel, testified that, on January 30, 2000, he was in the parking lot of the motel at 4:30 p.m. when he heard a 'pop, pop, pop' noise. He stated that, after hearing the noise, he saw a white man and a black man walking towards each other. Elliott testified that he heard a gunshot as he was getting into his car and looked up to see the black man run to a 'Jeep type vehicle' with a brown top and drive quickly away. Elliott stated that the black man was wearing a brimmed hat. Elliott said that he went to check on the white man and found him lying motionless on the ground. Elliott said he also encountered Rodriguez, who had blood all over his body, dressed only in boxer shorts.

*Johnson*, at \*1.

## III. THE APPLICABLE LEGAL STANDARDS

A. <u>Habeas Standard of Review</u>

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state court adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer,* 537 U.S. 3, 7-8 (2002).

3

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *See id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell,* 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El,* 537 U.S. at 330-31.

B.  Summary Judgment Standard of Review

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden

shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). While summary judgment rules apply with equal force in a section 2254 proceeding, the rule only applies to the extent that it does not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas petitioner's claim that he was denied the effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner here alleges the following instances of ineffective assistance of trial counsel, each of which is addressed separately.

A.  Failure to Investigate Potential Alibi Witnesses

Petitioner claims that trial counsel was ineffective in failing to investigate potential alibi witnesses. In support, he directs the Court to testimony by several witnesses at the motion for new trial hearing that they were never contacted by trial counsel and would have testified for petitioner if called.

In rejecting this claim on direct appeal, the state court of appeals found as follows:

Appellant faults his [two trial attorneys, R and H] for failing to interview potential alibi witnesses and points to nine witnesses' affidavits, which were attached to his motion for new trial, as proof of the witnesses' availability, credibility, and willingness to testify that they had seen appellant during a Super Bowl party at his home on the day of the murder. These affidavits were not admitted into evidence, and, even if they could constitute proof of the witnesses' availability and credibility, only the affidavit of appellant's wife places him at the Super Bowl party at the time of the murder. [FTN. Throughout his brief, appellant contrasts [the] performance of [R and H] with that of his former counsel in his first trial. We note that counsel in appellant's first trial also did not call these asserted alibi witnesses, with the exception of Darren Johnson.]

[Counsel R and H] testified at the motion for new trial hearing. [Counsel R] testified that, when he asked appellant for the names of the people who attended the Super Bowl party, appellant could only provide the names of his wife and Darren Johnson. [Counsel R] said that he did not believe that appellant's wife or Darren Johnson had been able to identify for him any other attendees of the party.

[Counsel H] testified that he interviewed appellant's wife, appellant, Porter, and potential alibi witness Darren Johnson about the Super Bowl party. [Counsel H] testified that he and appellant discussed calling some of the asserted alibi witnesses, but [Counsel H] determined that the witnesses would not be credible and could not provide useful testimony.

[Counsel R] testified that he did not call appellant's wife to testify because her testimony that appellant was at home between 3:00 p.m. and 5:00 p.m. that

7

> Sunday could have been easily contradicted by cell phone records placing appellant's cell phone in the cell grid that encompassed the site of the murder. [Counsel H] testified that he and [Counsel R] were concerned about suborning perjury and that appellant's wife's truthful testimony might have incriminated appellant because some of the cell phone calls between 3:00 p.m. and 5:00 p.m. were made between appellant and his wife. [FTN. The record also shows that, during the hearing on appellant's motion for new trial, appellant's counsel explained to the trial court that appellant had initially told the police that he thought he had been at a sports bar watching the Super Bowl at the time of the murder. Appellant later contacted police to say he was mistaken and that he had been at a Super Bowl party he hosted at his home.]
>
> Appellant also finds fault with his trial counsel's strategic decision not to call an alibi witness, Darren Johnson, who was standing by in case his testimony was needed. Darren Johnson was the only alibi witness who testified in appellant's first trial, in which the jury had hung nine to three in favor of conviction, according to appellant's trial counsel. In the first trial, the State emphasized in argument to the jury that appellant had produced only one alibi witness out of all the people who allegedly attended the Super Bowl party. Contrary to appellant's assertions in his brief, [Counsel R and H] were aware of the State's argument in the first trial and testified that they discussed with appellant whether or not to call Darren Johnson. [Counsel R] testified that he made the strategic decision, with appellant's agreement, that Darren Johnson was not a credible witness and calling him would only allow the State to emphasize again that only one of the attendees at the Super Bowl party came forward to give alibi testimony.
>
> \* \* \* \*
>
> Appellant's trial counsel presented sound explanations for their actions or inactions and showed that their decisions were based on trial strategy. That other counsel might have made different decisions does not render trial counsel's assistance ineffective. There is a strong presumption that an appellant's trial counsel's conduct falls within a wide range of reasonable professional assistance and might be considered sound trial strategy, and appellant has not demonstrated that his counsel's conduct was outside this range.

*Johnson*, at *2-3 (citations omitted).

8

The record supports the state appellate court's findings. Counsel R testified at the motion for new trial hearing that none of the individuals they interviewed, including petitioner and his wife, was able to provide them with the names and addresses of the other guests at the party. Motion for New Trial Hearing, Vol. 3, pp. 53-55, 109. Counsel H corroborated Counsel R's testimony. *Id.*, Vol. 1, pp. 126-128. Counsel R stated that, had he known of these alleged alibi witnesses, there was no reason not to pursue them. *Id.*, p. 54. He further testified that, of the individuals they did interview, no one was able to pinpoint petitioner's presence at the party during the approximate time of the murder. *Id.*, pp. 55, 96. He stated that, although Darren Johnson had testified in the first trial, petitioner had expressed concerns about using him in the second trial, and they decided not to call him at the retrial. *Id.*, pp. 56, 66. Counsel R testified that they did not call Darren Johnson at the second trial because:

> [Petitioner] did not want this one alibi witness to testify because [the prosecution] had used that effectively during the first trial to say, Where is everybody else at the Super Bowl party? And Darren had not been a very effective witness. [Petitioner] did not want that strategy pursued again.

*Id.*, Vol. 2, p. 110.

Moreover, the record shows that many of these potential witnesses would not have provided relevant alibi testimony . As observed by the appellate court in its opinion, the offense took place between 4:00 p.m. and 4:30 p.m. on Sunday, January 30, 2000. *Johnson*, at *1. Thus, it was incumbent upon any alibi witness to be able to establish petitioner's

whereabouts during that time frame. Potential alibi witness Montera Perry, fourteen years old at the time of the offense, was unable to do so at the motion for new trial hearing:

> Q: Did there come a time at the party when [petitioner] left for a while?
>
> A: I don't know. I was upstairs.

Motion for New Trial Hearing, Vol. 1, p. 41. Potential alibi witness Candy Johnson testified at the hearing that petitioner left the party "a couple hours" after she arrived, "maybe 5:00, maybe around that time," but she could provide nothing more definite:

> Q: Didn't you say that you got there around 11:30 or 12:00 o'clock noon?
>
> A: Yes.
>
> Q: But the truth is you don't know what time he left, do you?
>
> A: No.

*Id.*, pp. 73, 79. Tranesha Perry, nine years old at the time of the offense, likewise was unable to provide details or specific times at the hearing:

> Q: So what did you do at the Super Bowl party?
>
> A: We went upstairs and played with my cousins.
>
> \* \* \* \*
>
> Q: Just playing games. So you don't know whether [petitioner] left while you were upstairs?
>
> A: No.
>
> Q: You don't know if he left the house sometime that afternoon and returned sometime later, do you?

> A: No.

*Id.*, pp. 82, 89. Petitioner's wife, Gail Johnson, testified at the hearing that petitioner left the party at some point between 5:00 p.m. and 5:30 p.m.; however, she also answered "yes" when asked whether she would do whatever she felt she had to do to get her husband out of his current situation. *Id.*, Vol. 3, pp. 159, 168-169. Further, as noted by the state court of appeals in its opinion,

> [Counsel R] testified that he did not call [petitioner's] wife to testify because her testimony that [petitioner] was at home between 3:00 p.m and 5:00 p.m. that Sunday could have been easily contradicted by cell phone records placing [petitioner's] cell phone in the cell grid that encompassed the site of the murder. [Counsel H] testified that he and [counsel R] were concerned about suborning perjury and that [petitioner's] wife's truthful testimony might have incriminated [petitioner] because some of the cell phone calls between 3:00 p.m. and 5:00 p.m. were made between [petitioner] and his wife.

*Johnson*, at *3. Gail Johnson also testified that she gave Counsels H and R a list of the potential alibi witnesses prior to trial, but this was disputed by trial counsel at the hearing.

Potential alibi witness Pinky Johnson, petitioner's neighbor across the street, testified at the motion for new trial that she arrived at the party "a little bit before or a little bit after" 5:00 p.m., and saw petitioner barbecuing in front of the house. Motion for New Trial Hearing, Vol. 3, p. 121. She also testified that she saw him barbecuing between 3:30 p.m. and 4:30 p.m. before she arrived at the party, but had not informed petitioner's first trial counsel of that latter fact and was not subpoenaed to testify at the first trial. *Id.*, pp. 124, 127-128. As testified by Counsels R and H, neither petitioner, his wife, nor the other witnesses mentioned Pinky Johnson as a potential alibi witness prior to trial. Moreover, as

11

with Gail Johnson, this potential witness's testimony would be contradicted by the cell phone records which evinced calls being made on petitioner's cell phone at a location near the murder between 3:00 p.m. and 5:00 p.m.

In short, the record shows, and the state court found, that Counsels H and R investigated the existence of potential witnesses by directly asking petitioner, his wife, and other witnesses for names and addresses of potential alibi witnesses, but that no one provided the requested information. Petitioner does not rebut the presumed correctness of this finding with clear and convincing evidence. Further, Counsels H and R explained their reasons for not calling Darren Johnson or Gail Johnson as defense witnesses, which explanations the state appellate court found to be "sound explanations" based on trial strategy. In overruling petitioner's sole issue on appeal, the state court impliedly found that the sound explanations and trial strategy constituted *reasonable* trial strategy. The state court further found that the decision not to call Darren Johnson was made with petitioner's agreement. Petitioner does not rebut the presumed correctness of these findings with clear and convincing evidence.

Based on its own independent review of the record, this Court agrees that trial counsels' decisions constituted reasonable trial strategy under the circumstances of this case, and the state court's decision rejecting the ineffective assistance claims was not objectively unreasonable. Further, this Court will not revisit the credibility determinations impliedly reached by the state court regarding the conflicts between and among the witnesses' testimony at the hearing. *See Maggio v. Fulford*, 462 U.S. 111, 113 (1983) (holding that

federal habeas court is not free to substitute its own judgment as to the credibility of witnesses for that of the state court fact finder.) Petitioner fails to establish that trial counsel provided ineffective assistance of counsel regarding the alleged omitted alibi witnesses.

The state courts denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

### B. Failure to Obtain Mistrial Record

Petitioner further claims that Counsels H and R were ineffective in failing to obtain copies of the mistrial record to use in the second trial. He asserts that these records revealed the potential alibi witnesses and could have been used to impeach witnesses at the second trial with testimony from the first trial.

In rejecting this claim on direct appeal, the state court of appeals found as follows:

> [A]ppellant contends that [counsel R and H] were ineffective because they did not obtain the record from appellant's first trial. However, appellant admits that his attorneys did attempt to obtain a free transcript for him. [FTN. Appellant's wife testified in the motion for new trial that she and appellant offered to pay half of the cost of the transcript from the first trial and to pay the remainder later.] [Counsel H] also stated that, although appellant would not pay for the transcript from the first trial, appellant's counsel did have a transcript from the trial of Derrick Porter and full access to the State's files regarding both Porter and appellant.
>
> Appellant's trial counsel presented sound explanations for their actions or inactions and showed that their decisions were based on trial strategy. That

13

> other counsel might have made different decisions does not render trial counsel's assistance ineffective. There is a strong presumption that an appellant's trial counsel's conduct falls within a wide range of reasonable professional assistance and might be considered sound trial strategy, and appellant has not demonstrated that his counsel's conduct was outside this range.

*Johnson*, at *2-3 (citations omitted).

This Court's own independent review of the record finds adequate support for these findings, and the state court's decision rejecting petitioner's *Strickland* claim was not objectively unreasonable. Nor will this Court readdress the state court's credibility determinations regarding the witnesses' conflicting testimony. *See Maggio*, 462 U.S. at 113. Petitioner fails to rebut the presumed correctness of the state court's findings with clear and convincing evidence. Petitioner moreover fails to establish that, even had trial counsel obtained a full copy of the mistrial record, there is a reasonable probability that the result of the second trial would have been different. Although petitioner argues that by reviewing the mistrial record, counsel would have realized there were twenty or so guests at the Super Bowl party, trial counsel directly asked petitioner, his wife, and other witnesses for names and addresses of these potential witnesses, without success. Nor does petitioner establish with non-conclusory factual allegations that trial counsel would have more effectively cross-examined or impeached adverse witnesses had he obtained the mistrial transcript. Petitioner establishes neither deficient performance nor prejudice regarding any failure by trial counsel to obtain a copy of the mistrial record.

The state courts denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## VI. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 17) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED** as moot. A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 13rd day of August, 2010.

KEITH R. ELLISON
UNITED STATES DISTRICT JUDGE